UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

LAURICE WILLIAMS                                    :        **Civ No.:**
                                                    :
                                Plaintiff,          :
                                                    :
            -against-                               :        **COMPLAINT**
                                                    :
THE CITY OF NEW YORK,                               :
THE NEW YORK CITY DEPARTMENT OF                     :
CORRECTION, MORRIS LEWIS                            :        **(JURY TRIAL DEMANDED)**
(Individually And In His Respective Capacity As     :
An Acting Officer of the New York City Department   :
of Correction), and SEETA DOECHAN                   :
(Individually And In Her Respective Capacity As     :
Acting Officer of the New York City Department of   :
Correction)                                         :
                                                    :
                                Defendants.         :

----------------------------------------------------------------X

      Plaintiff, Laurice Williams ("hereinafter "Plaintiff" or "Williams"), by and through

her attorneys, L & D LAW P.C (*Liggieri & Dunisha*), complaining of Defendants, jointly and

severally, herein respectfully shows to this Court and alleges the following:

**NATURE OF THIS CASE**

1. This is an action to remedy discrimination based on gender discrimination, race

   discrimination, sexual assault, sexual harassment, hostile work environment and

   retaliation. This action is brought by Plaintiff Laurice Williams pursuant to the provisions

   of the Civil Rights Act of 1866, and pursuant to Article I, §11 of the New York State

   Constitution for the violation of her due process and other constitutional rights to be free

   from gender discrimination, race discrimination, sexual assault, sexual harassment,

   hostile work environment and retaliation.

1

2. Plaintiff also complains pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e et. Seq. ("Title VII"), and to remedy violations of the laws of the State of New York, based upon diversity and the supplemental jurisdiction if this Court pursuant to <u>Gibb</u>, 38 U.S. 715 (1966) and 28 U.S.C. §1367, seeking relief and damages to redress the injuries Plaintiff has suffered as a result of being sexually harassed, discriminated, and retaliated against by her employer on the basis of gender discrimination, racial discrimination, sexual assault, sexual harassment, and retaliation inflicted upon Plaintiff by Defendants.

3. Defendants engaged in a pattern and practice of committing sexual harassment alone with other forms of discrimination and had prior knowledge of such acts before Plaintiff Laurice Williams was sexually harassed and assaulted.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §§1331 and the Civil Rights Act of 1866 and 1871, which give this Court jurisdiction for each statute; the damages; exclusive of interest and costs in this instance exceed that of all lower courts, and this Court's pendent jurisdiction is also invoked.

5. The unlawful employment practices alleged herein occurred wholly or in part, in the jurisdiction of the Eastern District of New York.

## JURY DEMAND

6. Plaintiff hereby demands a trial by jury on all issues properly triable thereby.

## PARTIES

7. Plaintiff Laurice Williams is an African American woman who resides in the State of New York, Suffolk County.

8.  Defendant The City of New York was and still is a municipal public corporation authorized and existing under the laws of the City and State of New York.

9.  The City of New York Department of Correction assumes the risk of its Captains and the employment of said Captains who act under the color of law as uniformed officers of the City of New York and its subsidiary agency/corporation, the Department of Correction.

10. The Department of Correction City of New York has their headquarters at 75-20 Astoria Blvd, East Elmhurst, NY 11370.

11. At all relevant times, the City of New York acted through its agency, The New York City Department of Correction, to commit the acts alleged in this Complaint and were responsible for such acts.

12. At all times material, Defendant The New York City Department of Correction (hereinafter referred to as "DOC") is a municipal corporation, operating under the purview of the City of New York and duly existing by the virtue and laws of the State and City of New York. The DOC manages eleven inmate facilities in the City of New York throughout all five boroughs.

13. At all times material, Plaintiff Laurice Williams (hereinafter referred to as "Plaintiff" or "Williams") is employed by the City of New York and its agency The New York City Department of Correction.

14. Plaintiff was hired in or around January 2016, as a full-time employee in the position of Corrections Officer.

15. At all times material, Defendants' Supervisor Captain Morris Lewis (hereinafter referred to as "Lewis" was and is a supervising employee with the DOC.

16. At all times material Defendant Lewis had direct supervisory authority over Plaintiff Williams

3

with regard to her employment which included but was not limited to the ability to hire and fire along with other tangible employment actions.

17. At all times material, Defendant Lewis discriminated against the Plaintiff on the basis of her gender and race and subjected the Plaintiff to sexual harassment, hostile work environment and retaliation by consistently discriminating against the Plaintiff with denigrating comments and unwanted sexual advances in front of other officers.

18. At all times material, Defendants' Supervisor, Captain Seeta Deochan (hereinafter referred to as "Deochan") was and is a supervising employee with the DOC.

19. At all times material Defendant Deochan had direct supervisory authority over Plaintiff Williams with regard to her employment which included but was not limited to the ability to hire and fire along with other tangible employment actions.

20. At all times material, Defendant Deochan discriminated against the Plaintiff on the basis of her gender and retaliated against the Plaintiff for filing sexual harassment complaints against Defendant Lewis.

21. In addition, Defendant Deochan subjected Plaintiff to disparate treatment and hostile work environment because of her protected sexual harassment complaints against Defendant Lewis.

## PROCEDURAL HISTORY

22. On or about March 29, 2021, Plaintiff Williams filed an EEO (DOC's internal Equal Employment Office) Complaint of discrimination based on sexual harassment and retaliation, naming Captain Morris Lewis as the Respondent.

23. On or about April 7, 2021, Plaintiff Williams filed an EEO (DOC's internal Equal Employment Office) Complaint of Discrimination, naming Captain Morris Lewis as the Respondent.

24. On May 5, 2021, Plaintiff amended her complaint to include Defendant Seeta Deochan as a Respondent.

25. An investigation into these allegations revealed sufficient evidence to support Plaintiff's allegations.

26. On or about July 14, 2021, the Equal Employment Opportunity determined Plaintiff's allegations of sexual harassment and retaliation against **Defendant Morris Lewis to be substantiated.**

27. On or about February 11, 2022, the Equal Employment Opportunity determined Plaintiff's allegations of discrimination and retaliation against **Defendant Captain Seeta Deochan to be substantiated.**

28. On or about May 13, 2022, Plaintiff filed a charge of gender discrimination, race discrimination, sexual harassment, and retaliation with the Equal Employment Opportunity Commission ("EEOC").

29. On or about November 9, 2022, the EEOC issued a Right to Sue letter allowing the Plaintiff to file a lawsuit against the Defendant(s) in Federal Court.

30. This lawsuit is being filed within receipt of the 90-day EEOC Right to Sue letter.

## FACTS

1. In or around January of 2016, Defendant DOC hired Plaintiff Williams as a full-time employee in the position of Corrections Officer.

2. At the time, Plaintiff was 22 years of age. Plaintiff was full of hope and prayed for an amazing career and the opportunity to provide a better life for her two-year-old daughter.

3. In addition to working full time, Plaintiff was also a full-time mom and a student.

4. In or around June 2017, Plaintiff earned her Bachelor of Science degree in Community Health.

5. In or around May of 2018, the Plaintiff took and passed the promotional exam to become a Captain within the Department of Corrections.

6. While awaiting to be promoted to Captain, the Plaintiff decided to join the Special Search Team in February of 2019.

7. The Special Search Team is a preferred command which is comprised of an Elite Unit that goes to different facilities within Rikers Island, where they confiscate contraband from inmates for the safety of inmates and staff.

8. While under the supervision of her Captains in the Special Search team, Plaintiff showed her ability to learn, lead, and be resilient. Her time in the unit was great until in or around August of 2020.

9. In or around August of 2020, Plaintiff Williams was with her Supervisor, Captain Jermaine Phillips #1776 in the Captain's Office. Plaintiff's side was towards the door while the Plaintiff and Captain Phillips were having a work-related conversation. During this conversation, Defendant Lewis entered the room.

10. Defendant Lewis immediately came up behind the Plaintiff and lifted her up in a cradle position touching the Plaintiff in an inappropriate manner. Plaintiff jumped out of his grib and immediately left the office feeling embarrassed.

11. A few days following this incident, Plaintiff went into the equipment room to retrieve her equipment for the day. Captain Phillips was in the room next door, so Plaintiff went to talk to him for a work-related matter. At this time, Defendant Lewis entered the room, bent down with his face near Plaintiff's private area, lifted the Plaintiff up, and bent Plaintiff over his shoulder by her waist, holding her upper thigh and her buttocks. As soon as Defendant Lewis lifted the Plaintiff up, Plaintiff tried to get out of his grip, causing for Defendant Lewis to almost drop the Plaintiff

face first.

12. Plaintiff was petrified and screamed: ***"Put me the fuck down!"***

13. Although the Plaintiff was not at fault, Plaintiff immediately thought that she would get written up because of her foul language.

14. Plaintiff was so shaken and nervous with the way Defendant Lewis inappropriately touched her that she immediately demanded Defendant Lewis to put her down.

15. Plaintiff immediately stated to Defendant Lewis to never do that again. Feeling embarrassed and disgusted, Plaintiff exited the office.

16. The above actions by Defendants constitute an unwanted and unwelcomed sexual assault and sexual harassment.

17. A couple of days later, the Plaintiff was out on a "search operation" inside of RNDC facility, when Defendant Lewis sat at Plaintiff's table. Defendant Lewis began conversing with the Plaintiff about motorcycles; he then expressed to the Plaintiff that he owned a motorcycle. Defendant Lewis then asked the Plaintiff whether she liked bikes to which the Plaintiff responded that she was not really into bikes because she had lost a good friend in a motorcycle accident.

18. Defendant Lewis then asked the Plaintiff whether he could take her on a bike ride on September 7, 2020, which was his day off.  Still petrified from the prior incident, but understanding she was a subordinate, Plaintiff declined, stating ***"No I am ok, I work that day."***

19. Even though no means no, Defendant Lewis persisted, inquiring whether Plaintiff would like to go the next day in the morning before work. Plaintiff kindly rejected Defendant Lewis's inappropriate advances again.

20. Defendant Lewis did not take this rejection kindly.

21. On or about August 26, 2020, Defendant Lewis was conducting roll calls and was debriefing

the team on the operations for the day. After the team was debriefed, Defendant Lewis asked Officer Michael Thompson, #7670 about information regarding the RNDC facility.

22. After the completion of the roll call, Plaintiff went to the Captains' Office to pack her bag. Captain Phillips was in the office at the time and witnessed the Plaintiff packing her bag and readying some last-minute paperwork.

23. After the Plaintiff finished packing her bag, as Plaintiff was walking outside of the office, Defendant Lewis blocked the Plaintiff from exiting.

24. In a demeaning manor, Defendant Lewis, in the presence of Captain Phillips stated to the Plaintiff: ***"Why did you leave my roll call?!"*** Plaintiff responded by stating: ***"I thought you were finished sir."*** Defendant Lewis then yelled the following: ***"Williams!!"*** Plaintiff, although frightened, responded: ***"Yes…",*** to which Defendant Lewis again stated: ***"Why did you leave my roll call, I didn't even call out the names!!!"*** Plaintiff stated: ***"Sir I thought you were finished, and I was unaware that you didn't call out the names."***

25. In a very threatening manner Defendant Lewis then stated: ***"Don't do it again!!"***

26. After verbally threatening the Plaintiff, Defendant Lewis stepped aside so that the Plaintiff would be able to exit the office.

27. Defendant Lewis then walked past the Plaintiff mumbling: ***"People want to walk out my roll call, I'm going to make them feeel it!"***

28. The above acts were merely pretextual and show how Defendants Supervisor and Captain Lewis retaliated against the Plaintiff for denying his sexual advances and for not agreeing to go on a motorcycle ride with him.

29. The very next day, on or about August 27, 2020, Plaintiff was assigned as the "recorder" and went to VCBC facility to complete an operation. At the end of the day's operations, once Plaintiff

returned to the base, Plaintiff placed the clipboard back on the Captain's desk which was the normal procedure.

30. Defendant Lewis immediately began yelling at the Plaintiff: ***"Why are you placing the clipboard on my papers!"*** Plaintiff was unaware that there was any paperwork on the desk, so she picked up the clipboard and placed it on the desk behind Defendant Lewis and left the office.

31. On or about August 31, 2020, Officer Carmen Sanchez informed the Plaintiff that Defendant Lewis gave her an order to remove the Plaintiff from her current schedule.

32. At this time, prior to Defendant Lewis's arrival, Plaintiff had been on the Special Search Team **for over two years** <u>doing the same schedule, without any issues, write ups or **ANY** disciplinary actions.</u>

33. Now, because the Plaintiff rejected Defendant Lewis's crude and unwanted sexual advances, Defendant Lewis was retaliating against the Plaintiff by removing the Plaintiff from her current schedule.

34. Plaintiff was angered because on account of rejecting Defendant Lewis' sexual advances, the Plaintiff would now be sent back to her facility for three weeks, removing the Plaintiff from the preferred Special Search Team.

35. On or about September 11, 2020, angered by Defendant Lewis' retaliatory order to the Plaintiff, Plaintiff decided to confront Defendant Lewis regarding her schedule change.

36. Irrespective of her decision to confront Defendant Lewis, the Plaintiff was still afraid of Defendant Lewis. Thus, the Plaintiff inquired whether Officer Wilner Guilluame and Captain Phillips could attend the meeting between her and Defendant Lewis.

37. During the conversation, Defendant Lewis stated that the Plaintiff was a disrespectful person because she *threw* the clipboard on his desk and walked out the office. Plaintiff then stated: ***"I***

*placed* **the clipboard down like I always do, and once you mentioned there was paperwork underneath it, I removed it.**" Defendant Lewis then said: "***Ok, you did that and walked out.***" Plaintiff responded: "***I always do that. I put it down and leave the office.***" Defendant Lewis then said: "***No, Williams you're supposed to say: Hey captain I'm heading back to my jail to sign out.***" Plaintiff then stated: "***With all due respect sir, I don't ever say that.***" Defendant Lewis stated: "***You do say something.***" Plaintiff responded: "***I say goodnight?***" Defendant Lewis said "***YES!***" so Plaintiff asked: "***You're upset because I didn't say goodnight to you?***" Defendant Lewis said "***YES.***"

38. Defendant Lewis's response left the Plaintiff flabbergasted.

39. Plaintiff could not fathom how the position she held for almost two years, with the same schedule, without **any** disciplinary actions, could be taken away so easily by Defendant Lewis.

40. Plaintiff's hard work to retain her position – while aiming at promotion, (as she had already passed the Captains' exam) now amounted to nothing just because Plaintiff rejected unwelcomed conduct and comments and supposedly did not say "Goodnight!"

41. Defendant Lewis' clear blatant retaliation against the Plaintiff for rejecting his sexual advances astounded the Plaintiff.

42. In shock and fear of further retaliation, Plaintiff stated to Defendant Lewis: "***I was unaware that you were upset until I found out I was removed from the schedule.***" Defendant Lewis said: "***Well I don't have to tell you anything. I can just take you off the schedule!***"

43. Defendant Lewis then proceeded to compare their work relationship to a personal relationship, stating: "***You know when two people are in a relationship and they get tired of each other, they need a break and that's what me and you need.***"

44. Needless to say, Defendant's Defendant Lewis' last statement confused the Plaintiff, as

Plaintiff and Defendant Lewis are not in any kind of personal relationship.

45. The above further demonstrates inappropriate and unlawful behavior directed at the Plaintiff by Defendant Lewis.

46. After three weeks, in or around the end of September 2020, the Plaintiff returned to the Special Search Team.

47. As soon as the Plaintiff returned, Defendant Lewis resumed his discriminatory campaign by intimidating and harassing the Plaintiff.

48. Specifically, at roll calls, Defendant Lewis would single out the Plaintiff and call the Plaintiff by name but did not do this with other similarly situated officers.

49. In addition, during searches, Defendant Lewis would constantly call Plaintiff's name for no apparent reason.

50. Furthermore, Defendant Lewis was constantly gossiping about the Plaintiff to other supervisors as well as other officers.

51. At or around this same time period, Plaintiff asked Captain Darwin Brathwaite #998 and Captain Phillips #1776 whether she could come in the mornings so that she could avoid/not have to interact with Defendant Lewis however they couldn't because they didn't have the authority to change Plaintiff's schedule.

52. However, upon information and belief, Captains; Captain Darwin Brathwaite #998 and Captain Phillips #1776 personally advised Defendant Captain Lewis to leave the Plaintiff alone.

53. In or around the end of October or beginning of November 2020, the search team went to the AMKC facility where a situation necessitating the use of force arose. Per procedure, anyone involved in a use of force situation was required to write a report about the event.

54. Defendant Lewis instructed the Plaintiff to be around and collect all the reports from all officers

involved. The Plaintiff had to take the paperwork over to the AMKC facility.

55. When Plaintiff finished writing her report, she entered the Captains' Office where she noticed that Officer Novlet Miles #18405 was sitting in the office next to Defendant Lewis.

56. Plaintiff asked Defendant Lewis whether the report package was ready, as it was 2100 hours and her regular shift had now come to an end, meaning she was now on overtime.  Defendant Lewis stated: ***"No, I am waiting for Officer Tavarez and Captain Lewis to finish their reports."***

57. Officer Miles interjected, stating to Defendant Lewis: ***"You should not ask an officer whose tour is over at 2200 hours to take the package over."*** Frustrated, Defendant Lewis replied to Officer Miles: ***"Are you her lawyer? She's going to do it!"***

58. Since Plaintiff did not want to engage with Defendant Lewis, Plaintiff exited the office and entered into the other Captains' Office, where she found Captain Phillips. There, as ordered by Defendant Lewis, Plaintiff sat waiting.

59. Plaintiff, while waiting, asked Captain Phillips whether he had completed his report yet, to which the Captain Phillips responded: ***"Yes, I'm done and why you are still here?"***

60. Plaintiff did not know how to immediately respond. Captain Phillips insisted, asking: **"Aren't you 1x9?"** referring to Plaintiff's shift spanning from 1:00 to 9:30 PM. Plaintiff responded, ***"Yes, but Defendant Lewis instructed me to take the package over to AMKC."***

61. Upon being informed that Plaintiff was now on overtime, ordered to wait by Defendant's Supervisor Defendant Lewis on the preparation of the reports, Captain Phillips exclaimed: ***"No! I'm not paying overtime for that when we have officers here on straight time to do it!!"***

62. Captain Phillips stated he was going to talk to Defendant Lewis about it. This prompted the Plaintiff to plead with Captain Phillips not to do so, advising Captain Phillips that she feared further retaliation from him.

63. Disregarding the Plaintiff's pleads Captain Philips stated: *"No Williams! I'm tired of him harassing you! I don't understand why he keeps doing this to you!"*

64. Captain Phillips gave the Plaintiff a direct order to go get dressed and leave in the presence of Captain Lewis and officer Miles. Captain Phillips then proceeded to confront Defendant Lewis in the presence of Officer Miles and the Plaintiff.

65. Captain Philips instructed the Plaintiff to leave and further instructed Defendant Lewis to have Officer Tavarez deliver the package as he was on straight time.

66. Captain Phillips also told Defendant Lewis to stop harassing the Plaintiff.

67. At or around this same time period, the Plaintiff was in the GRVC security office. While Plaintiff worked on her paperwork, a CIB officer named Gonzalez was testing the contraband that was found, when Defendant Lewis stated to the Plaintiff: *"This is a nice picture."*

68. Plaintiff quickly realized Defendant Lewis had accessed Plaintiff's personal information through the ELS (employee lookup system) and was examining a photo of the Plaintiff.

69. Upon information and belief, Defendant Lewis accessed Plaintiff's personal data only to sexualize Plaintiff's photo which caused for the Plaintiff to be alarmed and in shock.

70. Going forward, throughout November of 2020 up to February of 2021, Defendant Lewis constantly ordered the Plaintiff to do the readings during the roll calls, to be the camera person on the search, and to write the emails for Defendant Lewis, which consisted of the Plaintiff sitting in the office with Defendant Lewis.

71. In or around February of 2021, feeling helpless, Plaintiff spoke to Captain Phillips and summarized the chain of discriminatory, retaliatory and harassing conduct by Defendant Lewis. In turn, on or about February 13, 2021, Captain Phillips informed Defendant Captain Seeta Deochan of Defendant Lewis' unlawful behavior.

72. Upon information and belief, in or around this time, Defendant Deochan was also informed of Defendant Lewis harassing another officer by the name of Miles, #18405.

73. On or about February 16, 2021, Captain Deochan called a meeting, encouraging participating officers to anonymously submit complaints. The meeting was supposed to be a safe space for these officers to voice their complaints anonymously, as they could not do so publicly because they feared retaliation by Defendant Lewis.

74. Upon information and belief, prior to this meeting, Captain Deochan was already aware of Defendant Lewis inappropriately touching the Plaintiff on more than one occasion because Captain Phillips had reported Defendant Lewis' behavior to Captain Deochan.

75. Captain Deochan sat on the DOC Workplace Violence Board and was tasked with reporting acts of sexual harassment and discrimination in the workplace. However, upon information and belief, Captain Deochan purposely failed to report these instances due to the personal relationship she has with Defendant Lewis.

76. Upon information and belief, Defendant Lewis and Captain Deochan are two of the three Captains who work under the supervision of Chief Kenneth Stukes.

77. At the meeting, Captain Deochan was supposed to read the anonymous slips that were in the yellow folder but instead chose to intimidate the Plaintiff by staring at her during the majority of the meeting and stating verbatim: ***"You all need to be careful what y'all say about people because that can be defamation of character."***

78. On or about March 5, 2021, approximately 3 weeks later, through Officer Joyce Davis, Defendant Lewis ordered the Plaintiff to report to the Captain's Office.

79. As ordered, Plaintiff went to the Captain's Office where she stood under the door frame. Noticing her unwillingness to go in, Defendant Lewis gave Plaintiff a direct order to step all the

way in. Plaintiff took two steps in, feeling extremely uneasy being by herself in the presence of Lewis.

80. At this time, in an alarmingly menacing murmur, Defendant Lewis said to the Plaintiff: *"You put in an allegation against me?"* Taken aback by the inappropriate question, the Plaintiff replied: **"Excuse me?"** Defendant Lewis then reiterated his statement again in an even more threatening tone: *"I said did you put in an allegation against me? Because that is what they are saying!"* Increasingly alarmed, Plaintiff responded: *"They who?"* Disregarding Plaintiff's question, Defendant Lewis responded: *"People are saying I touched your butt!"* Plaintiff was shocked and confused because protected complaints were supposed to be confidential. However, the Plaintiff responded to Defendant Lewis: *"Are you asking me did I say it, or did it happen?"*

81. Disregarding Plaintiff's response once more, Defendant Lewis then stated: *"And they are saying that I'm stalking you!"*

82. At this point Plaintiff felt extremely uneasy and stressed by the conversation. The delicate subject matter and Lewis' threatening tone led the Plaintiff to respond: **"I don't know!"** and then Plaintiff hastily left the office.

83. Defendant Lewis, using his position as a Captain at Defendant DOC, retaliated against the Plaintiff for filing a protected complaint and fueled the hostile work environment by threatening and intimidating the Plaintiff.

84. Later, that evening, at or around 23:00 hours, Defendant Lewis called the Plaintiff two more times on her phone. The Plaintiff, still frightened by the earlier interaction with Defendant Lewis chose to ignore the calls in fear of further retaliation and hostility.

85. On or about March 22, 2021, at approximately 1530 hours, while attending a roll call, Defendant Lewis stated: **"Williams, I heard you earlier, I don't know why I don't hear you now."**

At that moment everyone in the first rank turned about and looked at the Plaintiff. Upon information and belief, there were about 10 other officers in attendance from the same tour and Defendant Lewis was purposely singling the Plaintiff out by calling out her name.

86. In fact, Lewis' disdain and disparate treatment of the Plaintiff was so apparent that Officer Steven Brignol came up to the Plaintiff and asked her: ***"Why does Defendant Lewis do that to you at roll call? I have noticed him picking on you a lot"*** to which Plaintiff replied: ***"I'm not quite sure why…"***

87. Defendant Lewis' actions and the hostile work environment endured by the Plaintiff left her emotionally and physically exhausted. As a result, on or about March 23, 2021, Plaintiff went to see Dr. Spence, the psychiatrist at CARE (DOC's counseling unit) and expressed how Defendant Lewis was subjecting Plaintiff to unlawful and predatory behavior.

88. Dr. Spence immediately called the EEO (DOC's internal Equal Employment Office) and instructed Plaintiff to go and speak to EEO Counselor Virginia Rodriguez, to file an EEO complaint.

89. Plaintiff was apprehensive about going to EEO because Plaintiff observed the office's impartiality concerning other officers and also read a recent article in the news which further raised questions about the office's impartiality.

90. Though Plaintiff feared her complaints might be futile and lead to even further retaliation Plaintiff nevertheless spoke to Counselor Rodriguez and filed a protected EEO complaint.

91. Soon thereafer, Defendant Lewis came to the roll call, and stated: ***"They say I'm the bozo and I'm the one that get EEO."***

92. In the official complaint, submitted on March 29, 2021, Plaintiff stated in part:

> Defendant Lewis #212 constantly harasses female officers and tends to put his hands on officers. I believe he is

going to retaliate against me again. I do not trust male supervisors because he made me feel like they have ulterior motives. He is very intimidating to females only. He has done things to other female officers on the team. An officer named Cronin who currently works in RMSC that he harassed her as well has also informed me. She asked me about joining the search team but was afraid she was not going to get in because of her encounters with Defendant Lewis when she was working in EMTC. Some female officers do not even want to work with Defendant Lewis. My self-esteem is not the same anymore. I get depressed on the days I have to work with Defendant Lewis. I get anxiety when I am called to report to his office. I need someone to help me resolve this issue please.

93. Plaintiff handed in her EEO Complaint to Counselor Rodriguez and EEO Attorney Florina Getman, where they discussed changes to Plaintiff's tour in order to avoid any interactions with Defendant Lewis.

94. On or about March 29, 2021, the very same day that Plaintiff handed in her EEO complaint, Plaintiff was in the control room in the GMDC facility when the Plaintiff heard Defendant Lewis screaming ***"WILLIAMS!"*** in a very loud and disturbing manner. Plaintiff acknowledged that she heard him and proceeded to walk towards him.

95. When Plaintiff approached the doorway of the control room and responded **"*Yes?*"** to Defendant Lewis, Defendant Lewis stated to the Plaintiff: ***"COME HERE NIGGA!"***

96. Floored and appalled by Lewis' discriminatory remarks, Plaintiff, while maintaining her composure, responded: ***"Excuse me!"*** Plaintiff mustered the strength to maintain her composure and tried to deescalate the situation by information Lewis that she had to get something from Officer Buchanan and left the area immediately thereafter.

97. In lieu of what just transpired, Plaintiff – in fear – quickly walked back into the control room to retrieve her belongings.  Defendant Lewis, however, decided to follow the Plaintiff, crying out loud: ***"WILLIAMS!!"***

98. Plaintiff started walking faster out of the control room towards the staircase, intending to go up the stairs, and away from Defendant Lewis. Defendant Lewis yelled once more to the Plaintiff: ***"Williams!! I'm trying to talk to you! Why do you keep walking away?!"*** When Plaintiff turned, Defendant Lewis walked closer to the Plaintiff and in a very demanding tone stated: ***"Did you put an EEO in on me?"*** Plaintiff promptly responded: ***"Why do you keep asking me this? You are not supposed to ask me this!!"*** reminding Defendant Lewis of her right to not be harassed about an ostensibly ongoing confidential EEO investigation.

99. Rather than apologizing for the infringement of the Plaintiff's rights and in complete disregard of regulations, Defendant Lewis stated: ***"Yes, I can ask you, I don't care! Nothing is going to happen to me. Now tell me, did you?!"*** Plaintiff, in awe of the flagrant breach of protocol about an ongoing EEO investigation, stated: ***"This is the second time you asked me this, I don't understand."***

100. Since Defendant Lewis continued to harass and intimidate the Plaintiff, and would not stop asking her about her EEO complaint against him, the Plaintiff proceeded to walk up the stairs. Defendant Lewis followed in pursuit, insisting the Plaintiff to respond to his unlawful demands; shouting: ***"Williams! I just want to know!"***

101. As Plaintiff reached the top of the stairs, oblivious as to how to make Defendant Lewis stop following her, the Plaintiff finally pleaded: ***"You're making me feel very uncomfortable, can you just please leave me alone?"***

102. Plaintiff, feeling trapped, ran down to the control room, retrieving her belongings. Defendant Lewis followed the Plaintiff and then tried apologizing to the Plaintiff. After Defendant Lewis and the Plaintiff left, Plaintiff then called the EEO Office and spoke to EEO Attorney Investigator, Anastasia Chin.

103. Plaintiff was forced to call EEO again because instead of taking any preventative measures to help the Plaintiff, Defendants left Plaintiff in a hostile environment with her harasser.

104. Plaintiff broke down on the phone call with EEO Attorney Chin, as she discussed what had just happened with Defendant Lewis. Plaintiff provided EEO Attorney Chin with her location and time of the incident. Plaintiff further advised EEO Attorney Chin that since there were cameras in the area **there would be video footage of the whole incident, which the EEO should retrieve and review.**

105. EEO Attorney Chin informed the Plaintiff that she would look into the footage.

106. Additionally, Plaintiff expressed her concerns that Plaintiff's "confidential" complaint was immediately leaked to Defendant Lewis **the very same day** she dropped the complaint paperwork off to the EEO.

107. EEO Attorney Chin informed the Plaintiff that she did not notify Defendant Lewis of anything, and that she had just received Plaintiff's paperwork at 1600 hours.

108. Plaintiff asked whether there was a possibility that someone could have told Defendant Lewis because of the ties that he has to the Chief of Security's Office. Attorney Chin responded: **"*No, that's not possible.*"**

109. The above raises questions about the impartiality of the DOC EEO Office and demonstrates a failure to investigate or even acknowledge that Plaintiff's protected Complaint could have been leaked.

110. On or about April 7, 2021, Plaintiff Williams filed another EEO (DOC's internal Equal Employment Office) Complaint of Discrimination, naming Captain Morris Lewis as the Respondent.

111. On or about April 21, 2021, at approximately 12:30 PM, Plaintiff filed her second EEO

Complaint against Defendant Lewis. The complaint was filed over a departmental phone line because EEO Attoney Chin was working remotely. EEO Attorney Chin proceeded to ask the Plaintiff a series of questions that the Plaintiff answered accordingly. During their discussion, Plaintiff stated: ***"The reason why I didn't come sooner and put in a claim is because he knows people in high places, and he says this all the time."***

112. Ironically, the very next day, on or about April 22, 2021, at approximately 06:45 AM in the RNDC facility, outside of housing area 6LS, the team was lined up in a T-2 position when Defendant Lewis was conversing with C.O. Davis. and C.O. Davis asked Defendant Lewis: ***"What do you do when you take post?"*** Defendant Lewis responded: ***"Take post? I never took a post."*** Officer Davis asked him again, ***"You never took a post?"*** Defendant Lewis stated verbatim: ***"Nope I never took a post because <u>I know people in high places."</u>*** The Plaintiff and Officer O'Neal were also witnesses this incident/statement.

113. On or about April 23, 2021, at approximately 11:00 AM, Plaintiff had a phone conversation on a recorded line with EEO Attorney Chin, concerning the events that took place the prior day. During the conversation, Plaintiff reiterated how Defendant Lewis keeps bragging that he knows people in high places and again voiced her concern/fear on information being leaked.

114. EEO Attorney Chin reassured the Plaintiff about the EEO interview's confidentiality, claiming no one can listen to it. Plaintiff insisted it wasn't a mere coincidence, reminding Attorney Chin that on both occasions when Plaintiff submitted an EEO Complaint to her office, Defendant Lewis was informed within hours.

115. Plaintiff informed EEO Attorney Chin that Defendant Lewis used to work for the Chief of Security, Kenneth Stukes and he still retained ties to the office.

116. Upon information and belief, in addition to knowing high ranking DOC employees,

Defendant Lewis is also close friends with Captain Deochan, who works in the DOC's Workplace Violence Office. In fact, upon information and belief, Defendant Lewis and Defendant Deochan were two of the three Captains that worked for Chief of Security, Kenneth Stukes.

117. Upon information and belief, the Workplace Violence Office and the EEO Office work hand in hand.

118. Captain Deochan also approves the officer's schedules every week before the schedule is out for the staff to see.

119. On or about April 27, 2021, only four days after the Plaintiff had spoken with the EEO regarding Defendant Lewis's harassments, at approximately 06:30 AM, Plaintiff was notified that Captain Deochan ordered the Scheduling Officer, Sanchez, to remove the Plaintiff, Officer Alexis Gairy, and Office Stacey Missigher from a four-day schedule and to only give them two days instead.

120. Upon information and belief Officer Alexis Gairy had also filed a protected EEO complaint against Defendant Lewis for workforce violence.

121. Upon information and belief, Defendant Deochan retaliated against the Plaintiff for filing a protected complaint against Defendant Lewis.

122. Upon information and belief, Captain Deochan was further retaliating against Stacey Missinger on behalf of Defendant Lewis. Upon information and belief, someone reported that Defendant Lewis had grabbed Stacy Missinger by the neck and a case was under investigation.

123. Upon receiving the order, Officer Sanchez reminded Captain Deochan that Plaintiff had always worked at the Special Search Team and her command staffing levels were good. Plaintiff's command does not need the Plaintiff to report to her facility.

124. Disregarding Officer Sanchez's comments, Captain Deochan instructed Officer Sanchez to

place the Plaintiff on a two day per week schedule.

125. Previously, Plaintiffs' schedule was never a problem. However, now that the Plaintiff submitted a case against Captain Deochan's close friend, Defendant Lewis, Plaintiff's hours were being reduced.

126. The above demonstrated how Captain Deochan acted to enforce of Defendant Lewis' discriminatory animus.

127. On or about April 27, 2021, Plaintiff had another phone conversation with Attorney Chin and complained about the discrimination and retaliation of the Defendants. Specifically, in regard to her schedule. Attorney Chin advised the Plaintiff that she would speak to her supervisor and that she would have the Plaintiff come back into the EEO office to file a retaliation claim against Captain Seeta Deochan.

128. On May 5, 2021, Plaintiff amended her complaint to include Defendant Seeta Deochan as a Respondent.

129. On or about May 31,2021, the Plaintiff emailed Attorney Chin to inquire about the status of the complaint since Plaintiff had not heard anything from EEO.

130. On or about June 1, 2021, Attorney Chin emailed the Plaintiff back and informed her that the retaliation complaint was now open.

131. On or about July 14, 2021, the Equal Employment Opportunity determined Plaintiff's allegations to be substantiated.

132. In or around late August, Defendant Lewis was placed on leave.

133. On about September 5, 2021, a Go Fund Me page was set up for Defendant Lewis by his peers.

134. The Plaintiff was shocked to find out that 46 Officers had already contributed to the fund, showcasing that Defendant Lewis still had strong support among his peers, supervisors and subordinates.

135. Upon information and belief, it is illegal for a Department of Corrections Captain to accept monies via GoFundMe. In fact, there are news articles regarding other DOC Captain's receiving fines specifically for doing the same. Upon information and belief, Defendant Lewis was not fined for doing the same.

136. On or about September 23, 2021, Plaintiff emailed Attorney Chin inquiring about the retaliation claim she had filed. In response, Attorney Chin stated: "The closing report has not been completed. I am sorry for the delay, but you will be receiving a conclusion shortly." Plaintiff kindly thanked her for the update.

137. On or about November 15, 2021, Plaintiff emailed Attorney Chin yet again, inquiring about the status of her retaliation claim and informed her that to her knowledge, a complaint should be completed in 180 days.

138. On or about November 15, 2021, Ms. Chin emailed the Plaintiff back, stating that the investigation was closed, and the report had to be written. Plaintiff inquired about the date that the investigation was closed. Attorney Chin failed to answer the question and replied by stating: "The investigation has been closed. I cannot remember what date, but I just have to write the report. Once the report is written and signed by the commissioner you will receive notice in the mail, and I will also call you to let you know."

139. On or about January 29, 2022, still not having heard from Ms. Chin, Plaintiff emailed David Machado, and Melanie Barnes regarding her retaliation claims against Captain Deochan. Plaintiff inquired about the determination letter informing them she hadn't heard back on the status of her

claim since November 15, 2021.

140. The email stated in part:

> "My investigation started on April 7, 2021, and I emailed and had telecommunication with Ms. Chin about being retaliated against from the individual's colleague on April 27, 2021. She informed me she would run the cases together. On May 4th I conversed with Ms. Chin and she informed me that she would speak with her supervisor and have me come in to file a retaliation claim. I didn't hear anything from Ms. Chin until I emailed her on May 31, 2021, inquiring about the claim due to the fact that she hasn't called me into the office. On June 1, 2021, Ms. Chin emailed me back and informed me the retaliation complaint was open. She wasn't able to interview her due to her being out of work at the time. Ms. Chin went on to explain that the Complaint would have to be separated because my sexual harassment case has a time frame of 90 days and when the individual who i had a retaliation complaint against returns to work then it would resume. My sexual harassment case was closed early July of 2021. I emailed Ms. Chin on September 23, 2021, inquiring about the retaliation claim and she stated "the closing report has not been completed. I am sorry for the delay, but you will be receiving a conclusion shortly." I kindly thanked her for the update. November 15, 2021, I emailed Ms. Chin again inquiring about the claim and informed her that to my knowledge a complaint should be completed in 180 days. November 15, 2021, she emailed this writer stating that the investigation was closed, and the report has to be written. I inquired about the date that the investigation was closed. She failed to answer the question and replied "the investigation has been closed. I cannot remember what date but i just have to write the report. Once the report is written and signed by the commissioner you will receive notice in the mail, and I will also call you to let you know." That was the last time I had communication with Ms. Chin. It is a new year, several months later, and we have a brand-new commissioner. I'm just trying to get clarification of what's going on with my case. I feel that my case is being mishandled."

141. On or about February 11, 2022, Plaintiff was officially notified of the determination letter by EEO/Attorney Chin. The Claim came back as **substantiated for discrimination based on sexual harassment and retaliation.**

142. Both of Plaintiff's alleged complaints of discrimination based on sexual harassment and retaliation against both Defendants (Lewis and Deochan) came back as substantiated.

143. Upon information and belief, on or about June 15, 2022, Defendant DOC decided to terminate all the Chief's and hire outside personnel.

144. Upon information and belief, prior to Chief Kenneth Stukes leaving his position as Chief, he reinstated Defendant Lewis to his full position as Captain.

145. On or about June 23, 2022, Defendant Lewis was reinstated back to full duty.

146. Soon thereafter, upon information and belief, Defendant Lewis introduced himself to the fellow officers as the former Captain of Special Search and informed them that he was modified because of reasons outside of his control.

147. Upon information and belief, Defendant Lewis was not allowed to disclose any confidential information regarding the Plaintiff's alleged complaints.

148. Upon information and belief, after Defendant Lewis made this statement, soon thereafter, many fellow officers started asking questions why Defendant Lewis was on modified duty.

149. In or around September 2022, the Plaintiff went to the EEO to express her concerns about what she had heard from CO Alan Lubin.

150. The EEO informed the Plaintiff that Defendant Lewis is not supposed to speak about the situation. The Plaintiff inquired to why was Defendant Lewis reinstated back to full duty given the fact that the case is still ongoing. In response, the EEO Office informed the Plaintiff that they had nothing to do with Defendant Lewis being reinstated.

151. On or about October 5, 2022, the Plaintiff had a meeting with Assistant Chief of Administration, Chief Sherrie Rembert, as well as Commissioner Elizabeth Lundi of the EEO office. Upon information and belief, Chief Sherrie Rembert worked with Chief Kenneth Stukes

and Defendant Lewis.

152. The Plaintiff expressed her concerns regarding Defendant Lewis being reinstated back to full duty. Specifically, the Plaintiff complained stating that there are other officers who are modified for longer who have done less (no sexual harassment in the workplace) and that Defendant DOC reinstated Defendant Lewis back without even finishing the investigation regarding the case against him.

153. As a further result of Defendants' conduct, Plaintiff was left in a state of depression and hopelessness.

154. As a result of Defendant's actions, Plaintiff Williams felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

155. As a result of Defendant's discriminatory and intolerable treatment, Plaintiff Williams suffered and continues to suffer severe emotional distress.

156. As a result of the acts and conduct complained of herein, Plaintiff Williams has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails.

157. Plaintiff Williams has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

158. Plaintiff Williams further suffers from panic attacks and cannot sleep at night on account of Defendant's discriminatory and retaliatory conduct.

159. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff Williams demands Punitive Damages against Defendant.

160. The above are just some of the examples of unlawful and discriminatory conduct to which Defendant subjected Plaintiff Williams.

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

154.    Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

155.    Title VII states in relevant part as follows:

(a) Employer practices:

It shall be an unlawful employment practice for an employer –

(1) To fail to refuse to hire or to discharge any individual, or otherwise to

discriminate against any individual with respect to his compensation,

terms conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin;

156.    This claim is authorized and instituted pursuant to the provisions of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief

based upon the unlawful employment practices of the above-named Defendants.

Plaintiff complains of Defendants' violation of Title VII's prohibition against

discrimination in employment based, in whole or in part, upon an employee's race and

sex.

157.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C.

2000e et seq., by discriminating against Plaintiff as set forth herein.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendant)

158.    Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

159.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a)

provides that it shall be unlawful employment practice for an employer: "(1) to

discriminate against any of his employees… because she has opposed any practice made

an unlawful employment practice by this subchapter, or because she has made a charge,

testified, assisted or participated in any manner in an investigation, proceeding, or

hearing under this subchapter."

160.   Defendants engaged in unlawful employment practices prohibited by 42 U.S.C.

2000e seq. by discriminating against Plaintiff with respect to the terms, conditions, or

privileges of employment because of her opposition to the unlawful employment

practices of Defendants.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
### (Not Against Individual Defendants)

161.   Executive Law §296 provides that "1. It shall be an unlawful discriminatory

practice: (a) For an employer or licensing agency, because of an individual's age, race,

creed, color, national origin, sexual orientation, military status, sex, disability,

predisposing genetic characteristics, marital status, or domestic violence victim status,

to refuse to hire or employ or to bar or to discharge from employment such individual or

to discriminate against such individual in compensation or in terms, conditions or

privileges of employment."

162.   Defendants engaged in an unlawful discriminatory practice by discriminating

against Plaintiff as set forth herein.

163.   Plaintiff hereby makes a claim against Defendants under all of the applicable

paragraphs of Executive Law Section 296.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
### (As Against Individual Defendants)

164.    Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

165.    New York State Executive Law §296(7) provides that it shall be an unlawful

discriminatory practice:

> "For any person engaged in any activity to which this section applies to
>
> retaliate or discriminate against any person because [s]he has opposed
>
> any practices forbidden under this article."

166.    Defendants engaged in an unlawful discriminatory practice by discharging,

retaliating, and otherwise discriminating against Plaintiff because of Plaintiff's

opposition to the unlawful employment practices of Plaintiff's employer.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
### (As Against individual Defendants)

167.    Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

168.    New York State Executive Law §296(6) provides that it shall be an unlawful

discriminatory practice:

> "For any person to aid, abet, incite, compel, or coerce the doing of any
>
> acts forbidden under this article, or attempt to do so."

169.    Defendants engaged in an unlawful discriminatory practice in violation of New

York State Executive Law §296(6) by aiding, abetting, inciting, compelling, and

coercing the discriminatory conduct.

**AS A SIXTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Not Against Individual Defendants)**

170.     Plaintiff repeats, reiterates, and realleges each and every allegation made in the
above paragraphs of this Complaint as if more fully set forth herein at length.

171.     The Administrative Code of City of NY §8-107 [1] provides that "It shall be an
unlawful discriminatory practice: (a) For an employer or an employee or agent thereof,
because of the actual or perceived age, race, creed, color, national origin, gender,
disability, marital status, sexual orientation or alienage or citizenship status of any
person, to reduce to hire or employ or to bar or to discharge from employment such
person or to discriminate against such person in compensation or in terms, conditions or
privileges of employment."

172.     Defendants engaged in an unlawful discriminatory practice in violation of the New
York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining
discriminatory working conditions, and otherwise discriminating against Plaintiff as set
forth herein.

**AS A SEVENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Note Against Individual Defendants)**

173.     Plaintiff repeats, reiterates, and realleges each and every allegation made in the
above paragraphs of this Complaint as if more fully set forth herein at length.

174.     The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall
be unlawful discriminatory practice: "For an employer…to discharge…or otherwise

discriminate against any person because such person has opposed any practices forbidden under this chapter…"

175.    Each of Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(e) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

**AS AN EIGHTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(As Against Individual Defendants)**

176.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

177.    The New York City Administrative Code Title 8, §8-107(19) Interference with protected rights provides that it shall be unlawful discriminatory practice: "For any person to coerce, intimidate, threaten, or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

178.    Defendants violated the section cited herein as set forth.

**AS A NINTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(As Against Individual Defendants)**

179.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

31

180.    The New York City Administrative Code Title 8, §8-107(6) provides that it shall be

    unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce

    the doing of any of the acts forbidden under this chapter, or attempt to do so."

181.    Defendants engaged in an unlawful discriminatory practice in violation of the New

    York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting,

    compelling, and coercing the above discriminatory, unlawful, and retaliatory conduct.

**<u>AS A TENTH CAUSE OF ACTION</u>**
**<u>FOR DISCRIMINATION UNDER</u>**
**<u>THE NEW YORK CITY ADMINISTRATIVE CODE</u>**
**<u>(As Against Individual Defendants)</u>**

182.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the

    above paragraphs of this Complaint as if more fully set forth herein at length.

183.    The New York City Administrative Code §8-107(7) provides that "It shall be an

    unlawful discriminatory practice for any person engaged in any activity to which this

    chapter applies to retaliate or discriminate in any manner against any person because

    such person has (i) opposed any practice forbidden under this chapter, (ii) filed a

    complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a

    civil action alleging the commission of an act which would be an unlawful

    discriminatory practice under this chapter, (iv) assisted the commission or the

    corporation counsel in an investigation commenced pursuant to this title, (v) requested a

    reasonable accommodation under this chapter, or([v]vi) provided any formation to the

    commission pursuant to the terms of a conciliation agreement made pursuant to section

    8-115 of this chapter."

184.    Defendants engaged in an unlawful discriminatory practice of retaliating against

    Plaintiff in accordance with the above cited statue under §8-107(7).

## AS AN ELEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
### (Not Against Individual Defendants)

185.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

186.    The New York City Administrative Code §8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor provides that

a.  An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other subdivisions 1 and 2 of this section.

b.  An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision 1 or 2 of this section only where:

(1) The employee or agent exercised managerial or supervisory responsibility; or

(2) The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3) The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

187.    Defendants violated the section cited herein as set forth.

**AS A TWELVTH CAUSE OF ACTION**
**FOR VIOLATION OF RIGHTS SECURED BY 42 U.S.C. §1983**
**(Against All City/DOC Defendants)**

188.    Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated herein.

189.    42 U.S.C. §1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

190.    In committing the acts of discrimination and retaliation complained herein, the Defendants acted jointly and under color of state law to deprive Plaintiff of her clearly established constitutionally protected rights under the Fourteenth Amendment of the United States Constitution.

191.    Plaintiff in this action is a citizen of the United States and all of the individual Defendants to this claim are persons for purposes of 42 U.S.C. §1983.

192.    An employee may bring a retaliation claim under §1983 against a supervisor who, acting under color of law, retaliates against her for opposing discrimination in the terms of her employment.

193.    Defendants violated the above statute through multiple acts of unlawful gender and race discrimination, sexual harassment, and retaliation.

## AS THIRTEENTH CAUSE OF ACTION
### (Individual Supervisory Liability – 42 U.S.C. §1983 – As Against City/DOC Individuals)

194.    Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated herein.

195.    Individual Defendant LEWIS was at all relevant times, a captain within the Department of Corrections with oversight responsibility for the training, instruction, and supervision of Plaintiff.

196.    Defendant LEWIS knew or should have known that his individual actions against Plaintiff violated the United States Constitution.

197.    Defendant LEWIS, as the supervisory Captain of the DOC, acted in unlawful discrimination and retaliation against Plaintiff which was based on the Plaintiff's sex and gender.

198.    Defendant LEWIS directly participated in the unlawful constitutional violation against Plaintiff by sexually assaulting and harassing Plaintiff and then later by personally retaliating or forcing others to retaliate against Plaintiff after she complained of unlawful violations.

199.    Defendant LEWIS' actions created a policy or custom under which unconstitutional practices occurred.

35

200.    Defendant LEWIS acted with intent and/or deliberate indifference towards Plaintiff

after she complained of unconstitutional violations and took steps to further harm

Plaintiff's constitutional rights.

201.    Defendant DEOCHAN also knew or should have known he was unlawfully

discriminating against Plaintiff and failed to respond or address such actions in any way.

202.    On information and belief, Defendant LEWIS was personally involved in either

ordering, or failing to take preventative and remedial measures to guard against the

unconstitutional discrimination and retaliation against Plaintiff. Defendant DEOCHAN

also knew, or in the exercise of due diligence, should have known, that the

unconstitutional actions taken against Plaintiff were discriminatory in nature and

retaliatory.

203.    The failure of the individual supervisory Defendants to supervise and/or discipline

any of the aforementioned defendants with respect to their unlawful discrimination and

retaliatory actions amounted to gross negligence, deliberate indifference, or intentional

misconduct, which directly and proximately caused the injuries and damages to Plaintiff

set forth herein.

## AS FOURTEENTH CAUSE OF ACTION
## (EQUAL PROTECTION – 42 U.S.C §1983)

204.    Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated

herein.

205.    Individual Defendants LEWIS and Defendant DEOCHAN, were at all relevant

times, supervising employees in the DOC, with oversight responsibility for the training,

instruction, and supervision of the Plaintiff.

206.    Defendants LEWIS and Defendant DEOCHAN, failed to intervene, to prevent the clearly discriminatory and retaliatory actions taken against Plaintiff.

207.    Defendants LEWIS and Defendant DEOCHAN, actively participated in the clearly discriminatory and retaliatory actions taken against Plaintiff.

208.    Defendants LEWIS and Defendant DEOCHAN, actively condoned other officers to participate in the clearly discriminatory and retaliatory actions taken against Plaintiff.

209.    Defendants LEWIS and Defendant DEOCHAN also knew or should have known that their conduct was unlawfully discriminating against Plaintiff and failed to respond or address such actions in any way.

210.    Upon information and belief, Defendants LEWIS and Defendant DEOCHAN, were personally involved in either ordering or failing to take preventative and remedial measures to guard against the unconstitutional discrimination and retaliation against Plaintiff.

211.    Defendants LEWIS and Defendant DEOCHAN knew, or in the exercise of due diligence, should have known, that the unconstitutional actions taken against Plaintiff was likely to occur.

212.    The failure of the individual supervisory Defendants to supervise and/or discipline any of the aforementioned captains, officers, DOC prosecutors or other Defendants with respect to their unlawful discrimination and retaliatory actions amounted to gross negligence, deliberate indifference, or intentional misconduct, which directly and proximately cause the injuries and damages to Plaintiff set forth herein.

## AS FIFTEENTH CAUSE OF ACTION
## (EQUAL PROTECTION – 42 U.S.C. §1983)

213.    Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated herein.

214.    The aforementioned sexual harassment Plaintiff was forced to endure at the hands of Defendant LEWIS amounts to gender discrimination.

215.    The ensuing acts of sexual harassment committed by Defendants were based on a Plaintiff's gender.

**AS A SIXTEENTH CAUSE OF ACTION**
(***Monell* Claim – 42 U.S.C. – As Against CITY/DOC Defendants**)

216.    Defendants violated the above statute through multiple acts of unlawful gender and disability discrimination, sexual assault/harassment, and retaliation.

217.    Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated herein.

218.    All of the acts and omissions by Defendants described above, with regard to the unreasonable, unlawful, and retaliatory discrimination against Plaintiff were carried out pursuant to overlapping *de facto* policies and practices of the City of New York and its agency, which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory of authority of Defendant The City of New York Department of Corrections.

219.    Defendant The City of New York and its agency, The Department of Corrections, by their policy-making agents, servants and employees, authorized sanctioned and/or ratified the individual wrongful acts of Defendant LEWIS and Defendant DEOCHAN and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

220.    The actions of Defendant LEWIS and Defendant DEOCHAN resulted from and were taken pursuant to the *de facto* policies and/or well-settled and widespread customs and practices of the DOC. The relevant policies, customs and practices with regard to the disability and gender discrimination, and sexual harassment perpetrated against Plaintiff are that DOC captains are permitted to discriminate against and unlawfully retaliate against DOC officers who make protected complaints based on sexual harassment.

221.    The existence of the foregoing unlawful *de facto* unwritten policies and/or well-settled and widespread customs and practices is known to be encouraged, and/or condoned by supervisory and policy-making officers and captains of the DOC.

222.    Notwithstanding knowledge of such an unlawful *de facto* unwritten policy, practice, and/or custom, these supervisory and policy-making officers and captains of DOC have not taken steps to terminate this policy-making and/or custom, and do not properly train captains with regard to acts of unlawful discrimination and/or unlawful retaliation, and instead sanction and ratify this policy, practice, and/or custom through their active encouragement of, deliberate indifference to, and/or reckless disregard of the effect of said policies, practices, and/or customs upon the constitutional rights of Plaintiff and other persons similarly situated to Plaintiff.

223.    The aforementioned DOC policy, practice, and/or custom of failing to supervise, train, instruct, and discipline captains within the DOC is specifically exemplified and evidenced by the misconduct detailed herein.

224.    Plaintiff's injuries were a direct and proximate result of Defendant DOC's wrongful *de facto* policy and/or well-settled and widespread custom and practice and of the

knowing and repeated failure of Defendant DOC to properly supervise and train

captains with regard to unconstitutional discrimination and retaliatory conduct.

225.    Defendant DOC knew or should have known that the acts alleged herein would

deprive Plaintiff of her rights in violation of the Fourteenth Amendment to the United

States Constitution.

226.    Defendant DOC knew or should have known that the actions unlawful actions taken

against Plaintiff would occur since almost identical actions of Defendants were

complained of in the past and nothing was done to remedy such unlawful behavior.

227.    Defendants DOC is directly liable and responsible for the acts of the individual

Defendants because it repeatedly and knowingly failed to properly supervise, train, and

instruct them to require compliance with the constitutions and laws of the State of New

York and the United States.

**AS A SEVENTEENTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE §8-903-6**
**ALSO KNOWN AS THE GENDER-MOTIVATED VIOLENCE ACT ("GMVA")**
**(As Against individual Defendant LEWIS)**

228.    Plaintiff repeats and realleges each and every allegation contained in the preceding

paragraphs of the Complaint as set forth at length herein.

229.    In relevant part GMVA, N.Y.C. Code §8-904 provides: "[A]ny person claiming to

be injured by an individual who commits a crime of violence motivated by gender as

defined in section 8-903 of this chapter, shall have a cause of action against such

individual."

230.    Section 8-903 defined "crime of violence" as "an act or series of acts that would

constitute a misdemeanor of felony against the person as defined in state or federal

law… if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges."

231.    Section 8-903 also provides that such an act is "motivated by gender" if it is "committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender."

232.    In this case, Defendant LEWIS (i) committed an act that constituted a felony when (ii) he presented a serious risk of physical injury when he sexually assaulted Plaintiff (iii) on account of her gender, (iv) when sexual advances were rejected, and Defendant LEWIS developed or already had an animus toward Plaintiff's gender.

233.    Defendant LEWIS is liable to the Plaintiff under the GMVA in which Plaintiff Williams claims damages in an amount to be determined at trial.


WHEREFORE, Plaintiff demands the following relief jointly and severally against all Defendants:

    (a) a declaration that Defendants violated Plaintiff's federal and state civil rights;

    (b) compensatory damages for the injuries suffered by Plaintiff by reason of Defendants' unlawful and unjustified conduct, in an amount just and reasonable and in conformity with the evidence at trial in an amount to be determined at trial;

    (c) punitive damages against the individual Defendants assessed to deter such intentional and reckless deviation from well-settled constitutional standards, to the extent allowable by law;

    (d) damages for emotional distress, lost wages, back pay, front pay, statutory damages, medical expenses, interest;

    (e) reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988 and all other applicable laws; and

    (f) such other and further relief as appears just and proper.


Dated: New York, New York

January 31, 2022

**L & D LAW P.C.**

_____/s/_____

Paul Liggieri, Esq.
11 Broadway, Suite 615
New York, NY 10004
(212) 374-9786
*Attorneys for Plaintiff*